UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC., EMPLOYMENT PRACTICES LITIGATION | ) ) ) ) |
| | Case No. 3:05-MD-527 RLM (MDL 1700) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| *Raymond Tierney, et al. v. FedEx Ground Package System, Inc.,* Civil No. 3:05cv599 RLM-MGG (RI) | ) ) ) ) ) |

OPINION AND ORDER

Twenty proposed class actions in this multi-district litigation docket came before me on March 13-14 for fairness hearings. The cases are on limited remand from the court of appeals, where nineteen of them awaited resolution. The Judicial Panel on Multi-District Litigation centralized the cases under 28 U.S.C. § 1407, but the cases haven't been consolidated, so each proposed settlement must be examined separately.

I. History of the MDL Docket

In July 2005, the JPMDL granted (over the plaintiffs' objections) FedEx Ground's second request to centralize a series of cases in which FedEx Ground drivers claimed to be employees, rather than the independent contractors their employment contracts announced. The Panel reasoned that economies were to be gained because all drivers were governed by the same contract. The MDL process proved cumbersome. Even if the wording of each contract was the same,

each state's agency law varied, and differences in operation from one terminal to the next had the potential of affecting the decision.

The number of cases in the MDL docket eventually grew to 40. I appointed attorneys from three law firms to serve as co-lead counsel: Lockridge Grindal Nauen P.L.L.P. of Minneapolis, Harwood Feffer LLP of New York City, and Leonard Carder LLP of Oakland. I also appointed attorneys from three other firms – Cureton Caplan, P.C. of Delran, NJ; Siegel, Brill, Greupner, Duffy & Foster, P.A. of Minneapolis; and Zimmerman Reed P.L.L.P. of Minneapolis – to complete the plaintiffs' steering committee.

The stakes were enormous. Not only did the plaintiffs' co-lead counsel seek to represent upwards of 10,000 arguably under-compensated drivers, but the attack on drivers' independent contractor status threatened FedEx Ground's entire business model.

Consistent with those stakes, discovery was more than extensive. Although damages discovery was deferred, merits discovery and class discovery were conducted simultaneously. Some 3.2 million documents were produced and analyzed; seventeen sets of interrogatories were answered; 215 named plaintiffs answered fifteen requests for admission and sat for depositions; 105 FedEx Ground personnel sat for daylong depositions; 20 expert witnesses produced reports and sat for daylong depositions; *Daubert* motions were filed and defended. The class representatives were heavily involved in tracking down records and documents, as well as in preparing for, and giving, their own depositions.

The plaintiffs filed class certification motions in each of the cases; FedEx Ground opposed each motion. The plaintiffs filed an omnibus fact memorandum supported by 65 bankers' boxes of documents. In 2007 and 2008, I certified classes in 26 of the then-40 cases, and in all of the 20 on limited remand from the court of appeals. FedEx Ground sought interlocutory appellate review of the certification grants, and the plaintiffs successfully opposed that effort. Class notifications were hampered by spotty databases.

Sixty summary judgment motions and briefing followed. The drivers filed a 75-page statement of undisputed material facts with citations to 12 volumes. In 2010 and 2011, I denied a few of FedEx Ground's summary judgment motions but granted most, and granted all in the 20 cases now on limited remand. With respect to some of the cases, I suggested remand and the Panel sent the cases back to the transferor courts. Co-lead counsel appealed the summary judgment grants in these 20 cases to the United States Court of Appeals for the Seventh Circuit; in most of those cases, FedEx Ground cross-appealed the class certifications.

In both this court and the court of appeals, the parties recommended that the Kansas *Craig* case be addressed first, as something of a quasi-bellwether case. After briefing and argument, the court of appeals certified the employee/independent contractor case to the Kansas Supreme Court, which devised a new 18-part test and answered the certified question in the drivers' favor. Craig v. FedEx Ground Package Sys., Inc., 335 P.3d 66 (Kan. 2014). The court of appeals ultimately reversed my grant of summary judgment to FedEx

Ground in *Craig*, and remanded the case. <u>In re FedEx Ground Package Sys., Inc.</u>
<u>Emp't Practices Litig.</u>, 792 F.3d 818 (7th Cir. 2015). In addition to the reversal
in the Kansas case, rulings in other courts were trending toward findings of
employee status, *see* <u>Alexander v. FedEx Ground Package Sys., Inc.</u>, 765 F.3d
981 (9th Cir. 2014) (California law); <u>Slayman v. FedEx Ground Package Sys.,</u>
<u>Inc.</u>, 765 F.3d 1033 (9th Cir. 2015) (Oregon law), or at least toward fact issues
for trial. *See* <u>Gray v. FedEx Ground Package Sys., Inc.</u>, 799 F.3d 995 (8th Cir.
2015) (Missouri law); <u>Carlson v. FedEx Ground Package Sys., Inc.</u>, 787 F.3d 1313
(11th Cir. 2015) (Florida law).

The parties didn't immediately ask me to find for the Kansas drivers on
liability and suggest remand to the United States District Court for the District
of Kansas. Instead, the parties had chosen a mediator in an effort to resolve all
of the cases remaining in the Seventh Circuit.

Each case was mediated separately, with some cases requiring several
sessions. Each case was mediated with an eye on the governing law, which varied
from case to case. The mediation spanned four weeks. The drivers and FedEx
Ground exchanged experts' views as to the maximum recovery for each case if
the drivers prevailed across the board. Settlements were reached in each case,
and the court granted preliminary approval of each of the settlements. The
plaintiffs then retained Rust Consulting to administer the settlements.

I conducted fairness hearings on March 13 and 14, 2017, and on March
15 and 16, I notified the court of appeals of my inclination to enter final approval

of the class settlements. The court of appeals entered a second limited remand order on March 22 to allow me to do so.

## II. Fairness of the Settlement

Parties can't settle class actions without the court finding that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); Synfuel Technologies, Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 652 (7th Cir. 2006); *see also* EEOC v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985) ("The district court may not deny approval of a consent decree unless it is unfair, unreasonable, or inadequate."). In that effort, we in this circuit consider several circumstantial factors:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

Wong v. Accretive Health, Inc., 773 F.3d 859, 863 (7th Cir. 2014) (quoting Gautreaux v. Pierce, 690 F.2d 616, 631 (7th Cir. 1982)). Of those, the first is the most important. Martin v. Reid, 818 F.3d 302, 306 (7th Cir. 2016).

The *Tierney* case was filed in the District of Rhode Island in May 2005, and was centralized in this court under 28 U.S.C. § 1407 in September 2005. I granted the plaintiffs' motion for certification of a 121-member class in March 2008, and granted summary judgment to FedEx Ground in December 2010, finding that the plaintiffs were independent contractors under Rhode Island law. The class appealed.

In June 2016, the parties reached a proposed settlement. FedEx Ground would pay $1,600,000 to the plaintiffs. For each workweek of 35 or more hours during the class period, each class member would receive $29.99; for each workweek of 16-35 hours, each class member would receive$10.50. No class member would receive less than a $250 lump sum. The average recovery per class member would be $7,352, with the highest share being $20,332. No plaintiff would be required to fill out, or collect the information needed for, a claim form. No part of the settlement fund would revert to FedEx Ground if anything were left over.

The proposed settlement resulted from arms-length negotiations with a private mediator. Each side took stock of potential liability and damages under Rhode Island law. The class consulted an expert in accounting and damages, who concluded that the maximum recovery the plaintiffs could achieve would be $4,122,000 with interest. FedEx Ground assessed the claims' value at less than half of that. The proposed settlement amounts to about 39 percent of a perfect outcome.

A perfect outcome would be a long way off. At this point, my ruling that these drivers are independent contractors under Rhode Island law is the only judicial determination. The class would need for the court of appeals to find my ruling to have been in error; such an appellate ruling might consist only of a determination that Rhode Island drivers might be employees, but a trial is needed. Such a ruling would be followed by a likely FedEx Ground motion to decertify the class (seeking to exclude drivers who hired others to handle routes

and arguing that "full time" drivers would be too difficult to identify), a remand to the district court in Rhode Island, and a need to overcome defenses FedEx Ground didn't need to raise at the summary judgment stage. They faced some foggy Rhode Island law on rescission. If the plaintiffs prevailed at trial, FedEx Ground would likely appeal. Before the settlement, then, the class needed to string together victories in many skirmishes, beginning with a reversal in the court of appeals. The position of an appellant is not one of strength. And receipt of any money by any plaintiffs would be a long time off, well beyond the eleven years already invested in this litigation.

The plan for giving notice of the proposed settlement, and the third party administrator's execution of the plan, are detailed thoroughly in the papers supporting the plaintiffs' motions, and comply with the preliminary approval order, Federal Rule of Civil Procedure 23(e), and 28 U.S.C. § 1715.

No class member has objected to the proposed settlement.

Every settlement is a compromise, but this settlement achieves an impressive percentage of what the plaintiffs might have won had the case ever reached trial. In the absence of settlement, the best case scenario for the class is probably complex, would very likely take many more years, and is certain to be expensive – perhaps more than what has been incurred to get to this point. There is no opposition or objection. There is no indication or suggestion of collusion. Based on all of this, I find that the proposed settlement is fair, reasonable and adequate.

### III. Attorney Fees

Plaintiffs' co-lead counsel seek an award of attorney fees of $480,000 from the settlement amount. Our court of appeals favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante. See* In re Synthroid Marketing Litig., 325 F.3d 974, 979-980 (7th Cir. 2003). As co-lead counsel calculate, that would be 30 percent of the $1.6 million settlement fund. As I understand the law of this circuit, I must take another step or two before I can determine attorney fees.

In Redman v. RadioShack Corp., 768 F.3d 622, 630 (7th Cir. 2014), the court of appeals explained that if we simply divide the gross settlement figure by the attorney fee request, we saddle the class members with the costs of administration, which benefit the attorneys as well as the class members. Accordingly, the court explained, "[t]he ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." Id.

In their memorandum in support of the motion for final approval, co-lead counsel indicate that they expect the $1,600,000 class settlement fund to be allocated and distributed this way: about $919,000 to the class; $480,000 (if I award what counsel seek) for attorney's fees and costs; $50,000 to the third-party administrator for settlement administration; $15,000 (if I award what counsel seek) in service fees for each of the 9 named class representatives who

sat for depositions in this action; and about $16,000 (1 percent of the settlement) for a reserve fund for later payments to any self-identified class members.

The affidavit of the third-party administrator's representative in support of the plaintiffs' motion for final approval estimates that about $60,096 is needed for settlement administration [Doc. No. 2915]. The exhibit attached to the settlement agreement itself estimates about $39,716 for settlement administration [Doc. No. 2662-8]. I will base the amount withheld for administrative costs on the third-party administrator's estimates, and will authorize payment up to $75,000 for the cost of settlement administration, to provide an adequate buffer for any additional costs that may be incurred. The service fees and the reserve fund would go to class members, so the total going to class members plus the requested attorney fees (and costs) would be $1,525,000. A 30 percent fee, as calculated in accordance with *Redman v. RadioShack*, would be $457,500.

The objectors in the New Jersey case filed a motion to treat all of the settlements as an aggregate "megafund," and award much lower percentages for attorney fees across the board. At the fairness hearing, counsel for the New Jersey objectors didn't persuade me that the New Jersey objectors have standing to object to proposed settlements in cases to which they aren't parties. I am denying their requests to treat these cases as a single "megafund," but the ruling and its reasoning are to be found only in the opinion and order in the New Jersey case – the case in which the objectors have standing.

The Manual for Complex Litigation reports that in deciding an award of attorney fees, courts should consider the size of the fund to be shared by the attorneys and class members; the number of class members who will share; any understandings on attorney compensation methods actually reached at the outset of the attorney-client relationship; any side agreements class counsel might have made; any objections by class members; the attorneys' skill and efficiency; the litigation's complexity and duration; the risks of nonrecovery and nonpayment; the amount of time reasonably devoted to the case by counsel (a factor not favored in our circuit); and awards in similar cases. Manual for Complex Litigation (Fourth) § 14.121 (2004). Guides to determining a prevailing market rate include comparable contracts, data from large common-pool cases where fees were privately negotiated, and information on class-counsel auctions. In re Synthroid Marketing Litig., 264 F.3d 712, 719-722 (7th Cir. 2001). I must bear in mind that the greater the fee award, the lower the recovery by each class member. Redman v. RadioShack, 768 F.3d at 629. In evaluating these factors, I have relied on the convincing affidavit of Professor Brian T. Fitzpatrick, as well as the rest of the record in this case.

There have been no objections to the fee request, I have no information that any side agreements are involved, and the attorneys involved as co-lead counsel are very capable and experienced in wage and hour litigation (and they faced very capable and experienced attorneys that FedEx Ground hired). The size of the common fund is $1,525,000 after the third party administrator is paid, and up to 125 class members will share in the recovery.

The duration of the litigation has been far greater than usual – this case is almost 12 years old. In part, that duration reflects this case's having been co-mingled with the other cases in the MDL docket – it would have taken a judge in the District of Rhode Island far less time to resolve class certification issues and summary judgment motions under Rhode Island law than it took me to decide such things under the laws of 40 or so states – but it also reflects the complexity and risk involved. This class attacked FedEx Ground's business model, which was firmly grounded on the principle of using independent contractors rather than employees. The class members had a lot at stake, as shown by the damages expert's opinion that the class might recover more than $4 million, if everything broke for the plaintiffs. This was no nuisance suit or likely coupon settlement. A hard battle was predictable from day one.

The attorneys handled this case on a pure contingent fee basis. Whatever investment they made in discovery and briefing of class certification and summary judgment motion was made largely between 2005 and 2007 -- eleven years ago, give or take a year. That's much longer than average for contingent fee attorneys in class actions, according to Professor Fitzpatrick.

The plaintiffs faced legal challenges they needed to overcome to establish their employee status and obtain meaningful damages. Rhode Island didn't define "reasonable promptness," leaving the restitution claim open to an attack based on delay in seeking rescission. Arguments were also available that any offending portions of the operating agreement were severable, and that rescission was inappropriate because the parties couldn't be restored to the status quo.

They faced (and overcame) a challenge in obtaining certification of a statewide class that included drivers with single routes, drivers with multiple routes, drivers who hired others to handle a route, drivers who signed employment contracts and those who signed as corporate entities. So while the plaintiffs' bar generally views wage and hour cases as undesirable, Mr. Tierney and his fellow drivers presented challenges that went well beyond the normal wage and hour case. The risk of non-liability and no compensation was great; these plaintiffs were in the court of appeals trying to reverse a finding of no-liability.

With all of that in their way, class counsel – armed primarily by a new direction in Kansas law and a few federal court of appeals decisions in cases the Panel remanded to transferor courts – achieved a truly remarkable result. FedEx Ground agreed to pay $1.6 million, reflecting 39 percent of what the plaintiffs thought they could recover if they ran the table.

Professor Fitzpatrick's analysis of recent cases from our circuit – which seems to have a greater preference than other circuits for the percentage-of-the-fund method of valuation – supports a fee award of 30 percent of the fund to be shared by counsel and class members. He reports that the average and median findings of market rate in contingent fee awards in labor and employment cases were 34.3 percent and 33.3 percent. He also noted that the awards he studied addressed only attorney fees and not expenses; co-lead counsel have included expenses within their requests. Plaintiffs' counsel report that expenses incurred in the MDL docket (not just in the Rhode Island case) exceeded $7,713,000.

In some settings, the prevailing market rate for class counsel depends in part on the expected size of the payout at the end of the litigation. Professor Fitzpatrick concedes that his sample of awards in labor and employment class actions didn't include recoveries in large amounts. In the setting of a securities class action, the court of appeals said "[d]ata show that 27.5% is well above the norm for cases in which $100 million or more changes hands. Eisenberg and Miller find that the mean award from settlements in the $100 to $250 million range is 12% and the median 10.2%." Silverman v. Motorola Solutions, Inc., 739 F.3d 956, 958 (7th Cir. 2013).

The size of this class action settlement is much smaller than the $200 million involved in *Silverman v. Motorola Solutions*. But it blinks reality to ignore that while this case was settled individually, it's one of 20 that remain on the MDL docket, and the aggregate proposed settlements total more than $200 million, and far more when counting cases that have already been remanded. The remanded California case settled for $226.5 million on its own. *See* Alexander v. FedEx Ground Package Sys., Inc., No. 05-cv-38, 2016 WL 3351017 (N.D. Cal. June 15, 2016). There's no doubt that much of the discovery behind these cases overlapped, and that co-lead counsel applied a concerted strategy in moving them to settlement. On the other hand, class counsel applied laws specific to Rhode Island and conducted case-specific discovery. The settlement I am considering at this point only involves the Rhode Island plaintiffs and fees.

*Silverman v. Motorola Solutions* doesn't present an apples-to-apples analysis. First, Professor Fitzpatrick points out that securities cases like *Silverman v. Motorola Solutions* differ from wage and hour litigation in many ways, not least of which that class certification in securities cases is nearly automatic under today's laws. In *Tierney v. FedEx Ground*, as with all the other cases in this MDL docket, class counsel fought hard to get large classes certified, and (at the time of the settlements) would have seen those certifications revisited in every case in which they prevailed at the court of appeals.

Second, it's not clear that the *Silverman v. Motorola Solutions* analysis applies, or applies fully, to our case. As already noted, the settlement amount in this case – the *Tierney v. FedEx Ground* case – isn't even in the ballpark of what was involved in *Silverman v. Motorola Solutions*; I have to look at many other cases even to reach the $50 million amount the *Silverman* court also mentioned.

It's also not clear whether I am expected, or even allowed, to consider the nature of the plaintiffs involved in a case. The plaintiffs in *Silverman* were investors in Motorola; the class representatives were institutional investors. Silverman v. Motorola, Inc., No. 07-C-4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012). Institutional investors are likely to be more sophisticated in the market for legal services than the individual drivers in this case, and so likelier to agree at the outset to a tapered fee arrangement rather than a simple percentage-of-the-recovery arrangement.

Third, if I am to consider the other settlements in this MDL docket, it seems appropriate to consider as well that many of the named plaintiffs (though

not the ones in this case) agreed at the outset to pay the attorney 33 percent of any recovery, without limitation as to how much the recovery might be. None of the class representatives in the 20 cases remanded to me have fee agreements for any percentage less than 30 percent.

A lodestar cross-check – inquiring into billable hours and billing rates – isn't encouraged in this circuit, *see* <u>Williams v. Rohm and Haas Pension Plan</u>, 658 F.3d 629, 638 (7th Cir. 2011); <u>Cook v. Niedert</u>, 142 F.3d 1004, 1013 (7th Cir. 1998), and I'm not undertaking such a cross-check. A very complex examination of time sheets, hourly rates in various markets, and records would be needed to arrive at a true lodestar figure for this case alone. Co-lead counsel report, just in case, that across this litigation (not just this case), co-lead counsel and their firms have devoted more than 149,393 hours, producing an unadjusted collective lodestar fee of $74,540,341 had they billed by the hour. It would take only a modest 1.3 multiplier, co-lead counsel tell me, for the lodestar calculation to match the percentage-of-the-fund calculation across the litigation.

Even identifying the precise amount attributable to work on the cases remaining in the MDL would be difficult. In *Alexander v. FedEx Ground*, for example, Judge Chen attributed about $12.4 million in lodestar work on the MDL to *Alexander*. *See* <u>Alexander v. FedEx Ground</u>, No. 05-cv-38, 2016 WL 3351017, at *3 (N.D. Cal. June 15, 2016). This would need to be subtracted out of co-lead counsel's estimated lodestar figure for the MDL, but the fee award in that case is on appeal and might be adjusted. The fee award is unpaid. Fee awards in other remanded cases total $6,304,893, and I would need to deduct

15

the amount of fees expected to be paid in those that can be attributed to work on cases still in the MDL. I don't have an accurate way to calculate the denominator from which I can then derive a multiplier.

It seems inescapable that there is a significant spillover between the 20 cases remaining in MDL-1700. For example, the appeal/certification/re-argument in the *Craig v. FedEx Ground* case from Kansas clearly benefitted all of the classes; it was part of the trend in the law that seemed to be shifting away from FedEx Ground's legal position. The depositions co-lead counsel took of FedEx Ground's national officers produced information that applied to all of the cases. But the spillover might be less than it appears at first blush. Substantial discovery surrounded local dispatch terminals, and the lion's share of the briefs on class certification and summary judgment were devoted to the specific laws of the various states.

For me to count up, or assign weight to, the various points I have discussed (effectively transforming them into "factors") would be inconsistent with the law of our circuit. It would be what our court of appeals has called "chopped salad". In Re Synthroid Marketing Litig., 264 F.3d at 719. But these are the reasons I conclude that the requested 30 percent (after accounting for the costs of administration) produces a reasonable attorney fee:

1. At the outset of the attorney-client relationship, it would have been plain to the clients and attorneys that this litigation would be hard fought and would take years. FedEx Ground's very business model was at stake, and, if the class was defined broadly, the drivers would have

hundreds of thousands – maybe millions – at stake. The history of this case – what would have been the future at the outset of the relationship – was even worse, with the case being centralized in a multidistrict litigation docket, the extensive discovery already discussed, and a decade of litigation, and no end in sight that would benefit the plaintiffs.

2. Because of the anticipated duration of the case, it also would have been plain to all that the attorneys would have to turn away prospective clients and tie up their own funds for the life of the case.

3. Counsel produced exceptional results in the face of long odds. Rhode Island law provided no assurance of success, and these plaintiffs were appellants at the time of the settlement. *See* <u>Redman v. RadioShack</u>, 768 F.3d at 633 ("the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation.").

4. The amount of recovery would have been a fraction of what this settlement proposal contains had counsel not persuaded me to certify a class that included drivers with a single work area, drivers with multiple work areas, drivers who contracted with FedEx Ground under a corporate identity, and drivers who simply hired others to cover some of their assigned routes.

5. Of the 20 fee contracts in the cases that remain in MDL-1700, none set a percentage of the recovery less than the 30 percent requested here, and some set the percentage at one-third of any recovery.

6. There is nothing from which I can infer that unsophisticated (in the market for legal services) clients – when compared with institutional plaintiffs – would request a tapered-fee arrangement.

7. The fee request, unlike those to which it might be compared, includes expenses rather than seeking them separately. While I can't say how much is attributable to the Rhode Island case as opposed to the others co-lead counsel was handling, the overall total of expenses was $7.7 million.

8. Nobody has objected to co-lead counsel's fee request.

For all of these reasons, I approve, in large part, the proposed settlement agreement's proposed award of attorneys' fees and expenses in the total amount of $457,500 (30 percent of the gross settlement amount, less the cost of administration).

IV. Service Awards to Class Representative

Class counsel request service awards of $15,000 to each of the 9 class representatives. They explain that (in addition to the extraordinary duration of their service) each class representative did far more than the average class representative. Reams of records had to be collected, the class representatives (like each class representative in the companion cases) sat for a grueling day-long deposition. Class counsel notes that the requested awards are in line with several that have been approved in cases from within this circuit, citing Cook v. Niedert, 142 F.3d at 1016 ($25,000); In re Southwest Airlines Voucher Litig., No.

11 C 8176, 2013 WL 4510197, at *11 (N.D. Ill., Aug. 26, 2013) ($15,000 to 2 plaintiffs); Heekin v. Anthem, Inc., No. 05-cv-1908, 2012 WL 5878032 at *1 (S.D. Ind. Nov. 20, 2012) ($25,000); Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc., No. 07 C 2898, 2012 WL 651727, at *17 (N.D. Ill. Feb. 28, 2012); ($25,000 to each of 7 plaintiffs); Will v. Gen. Dynamics Corp., Civ. No. 06-698, 2010 WL 4818174, at *4 (S.D. Ill. Nov. 22, 2010) ($25,000 to 3 plaintiffs). No objections were directed to this request.

The request for $15,000 service awards for each of the 9 class representatives is just, fair and reasonable.

## V. CONCLUSION

Based on the foregoing, the court:

(1) GRANTS the plaintiffs' unopposed motion for final approval of the Rhode Island class action settlement calling for payment of $1,600,000 to the plaintiffs [Doc. No. 2879].

(2) GRANTS IN PART the plaintiffs' motion for attorney's fees and costs [Doc. No.2823], AWARDS class representatives Ricardo Bacani, Sammy Farland, Alan Ginet, Roland Guillet, Paul Luongo, Donald J. McClafferty, Stephen H. McGuinnes, Wayne F. Mills, Jr., and Raymond Tierney, $15,000 each for their services in this case, DIRECTS payment of that amount from the class settlement fund to them, in accordance with the terms of the settlement agreement; and AWARDS plaintiffs' counsel $457,500 for their services on this case.

(3) ORDERS that:

A. The parties shall perform, or cause to be performed, the remaining terms of the settlement as set forth in the settlement agreement. The court authorizes the payment by the settlement administrator of the settlement funds in accordance with the terms of the settlement agreement.

B. Prior timely opt-outs on the list maintained by the claims administrator are not included in, or bound by, this order and final judgment. Those timely opt-outs are not entitled to any recovery from the settlement proceeds obtained through this settlement.

C. The court hereby DISMISSES with prejudice this action, specifically including the Released Claims, with each party to bear its own costs and attorney's fees, except as provided below. The court incorporates the Class Action Settlement Agreement [Doc. No. 2662-1] by reference in this order.

As set forth in the Settlement Agreement, "Released Claims" means all claims, actions, causes of action, administrative claims, demands, debts, damages, penalties, costs, interest, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, which: (i) are owned or held by the plaintiffs and class members and/or by their affiliated business entities (if any), or any of them, as against Releasees, or any of them; (ii) arise under any statutory or common law claim which was asserted in this lawsuit or, whether or not asserted, could have been brought arising out of or related to the allegations of misclassification of plaintiffs and class members as independent contractors set forth in the operative complaint; and (iii) pertain to any time in the Release Period. The

Released Claims include any known or unknown claims for damages and injunctive relief. The Released Claims include but are not limited to claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, and common law claims for fraud, breach of contract, rescission, unjust enrichment, or declaratory judgment. The release excludes claims arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. Further definitions of "Released Claims" can be found in Sec. I, para. S of the Settlement Agreement [Doc. No. 2662-1].

"Releasees" means: "(a) [FedEx Ground], and its consolidated subsidiaries, successors, predecessors, assigns, affiliates, parent companies, shareholders, officers, directors, agents, insurers, attorneys, and employees; and (b) [FedEx Ground's] past, present, and future shareholders, officers, directors, agents, employees, attorneys, and insurers." (Settlement Agreement, Sec I, para. T). "Release Period" refers to the time period from May 19, 1999 through April 30, 2016. (Settlement Agreement, Sec. I, para. U). [Doc. No. 2662-1].

D. Upon the entry of this order, the plaintiffs and all class members shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against all Releasees. "Class members" include "All persons who: 1) entered into a FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as form OP-149 and Form OP-149-RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) from May 19, 1999 October 15, 2007 to provide package pick-up and delivery services pursuant to the Operating Agreement; and

3) were dispatched out of a terminal in the state of Rhode Island." [Doc. No. 2662-1]. A list of the class members is attached to this order as Exhibit A. To the extent additional individuals are identified who qualify as class members under the terms of the settlement agreement, they will be bound by this order.

E. Upon the entry of this final approval order, the plaintiffs and all class members are barred and enjoined from asserting, filing, maintaining, or prosecuting, or in any way participating in the assertion, filing, maintenance or prosecution, of any action asserting any Released Claim against any of the Releasees, as set forth in and in accordance with the terms of the settlement agreement. Nothing in this order shall in any way impair or restrict the right of the parties to enforce the terms of the settlement.

F. The Parties' agreed upon procedure for disbursement of the $16,000 reserve fund provided for in the Settlement Agreement and the Plaintiffs' Motion for Final Approval [Doc. No. 2879], with such claims to be paid approximately 220 days after checks are issued to pay the claims of persons who fit the class definition but who were not previously identified as members of the plaintiff class according to the settlement formula described in the Settlement Agreement, is APPROVED. FedEx Ground will submit a list containing the names of such persons within 220 days of this order; this list will supplement the class member list attached as Exhibit A and such persons will be bound by this order.

G. The parties' request for appointment of Rhode Island Legal Services, 56 Pine Street, Fourth Floor, Providence, RI 02903 to be the *cy pres* beneficiary is APPROVED.

H. Neither the settlement, nor any act performed or document executed pursuant to or in furtherance of the settlement, is or may be deemed to be or may be used as: (a) an admission of, or evidence of, the validity of any Released Claim or any wrongdoing or liability of any Releasee; (b) an admission or concession by the plaintiff or any class member of any infirmity in the claims asserted in the operative complaint filed in this action; (c) an admission of, or evidence of, any fault or omission of any of the Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

I. The third-party administrator, Rust Consulting, Inc., may retain up to $75,000 as compensation for settlement administration.

J. Without affecting the finality of this judgment in any way, the court retains continuing jurisdiction over:  (1) the enforcement of this order and final judgment; (2) the enforcement of the settlement agreement; (3) the distribution of the settlement proceeds to the class members and the *cy pres* beneficiary; and (4) class counsel's proposed allocation of attorney's fees to plaintiffs' counsel to be submitted to the court.

The clerk of this court is directed to enter judgment accordingly.

SO ORDERED.

ENTERED:  April 28, 2017

_____/s/ Robert L. Miller, Jr._____
Judge
United States District Court

| Count | Main_RustID | Contractor Name | Company Name 1 | Company Name 2 |
|---|---|---|---|---|
| 1 | 14000010 | GINET, ALAN MICHAEL | | |
| 2 | 14000027 | FONSECA, ANIBAL S. | | |
| 3 | 14000034 | POLICELLI, ANTHONY P. | | |
| 4 | 14000041 | MORRISE, BILL B. | | |
| 5 | 14000058 | PALMER, BOBBIE JOE | BJ PALMER DELIVERIES INC. | |
| 6 | 14000065 | RIOUX, CHRIS | | |
| 7 | 14000072 | BACANI, DELFIN | | |
| 8 | 14000089 | KING, DENNIS ALAN | | |
| 9 | 14000096 | TRASK, DENNIS R. | | |
| 10 | 14000102 | DUARTE, JOSE C. | DUARTE'S DELIVERY SERVICE INC. | |
| 11 | 14000119 | SARAULT, ERIC | | |
| 12 | 14000126 | BOOTH, GARY | | |
| 13 | 14000133 | STEVENS, MARK | | |
| 14 | 14000140 | MOWATT, STEPHEN P | MOWATT TRANSPORT | |
| 15 | 14000157 | DIFO, RAFAEL A. | DIFO DELIVERIES LLC | DIFO DELIVERIES INC |
| 16 | 14000164 | GOLDEN, RAYMOND F | GOLDEN DELIVERY INC. | |
| 17 | 14000171 | DIAS, RICHARD | | |
| 18 | 14000188 | SIMONEAU, ROBERT L. | | |
| 19 | 14000195 | JULIO, ROBERTO | | |
| 20 | 14000201 | SILVA, ROBERTO | R P S INC. | |
| 21 | 14000218 | ST.PIERRE, RODNEY M | | |
| 22 | 14000225 | FORTIN, RONALD P. | | |
| 23 | 14000232 | OZVAN, SEDAT | OZVAN TRUCKING LLC | |
| 24 | 14000249 | HAMILTON, STEPHEN M | | |
| 25 | 14000256 | MCGUINNESS, STEPHEN | | |
| 26 | 14000263 | JENKINS, STEVEN A. | | |
| 27 | 14000270 | DUMAS, TIMOTHY P. | | |
| 28 | 14000287 | THOMAS, WILLIAM R. | | |
| 29 | 14000294 | STORWELL, WILLIAM | | |
| 30 | 14000300 | SCOTT, YANG | | |
| 31 | 14000317 | GREENE, LEVI | | |
| 32 | 14000324 | CORBETT, ALBERT A. | | |
| 33 | 14000331 | MCCLAFFERTY, DONALD | | |
| 34 | 14000348 | PEREIRA, DONALD | | |
| 35 | 14000355 | DANHO, GABRIEL | GJD PACKAGE SERVICES INC. | |
| 36 | 14000362 | HENDERSON, JOSE G. | HENDERSON DELIVERY SVCS INC. | |
| 37 | 14000379 | MARTUCCI, JOHN F. | | |
| 38 | 14000386 | CHAPMAN, JOHN P. | | |
| 39 | 14000393 | LIMA, JOSE | | |
| 40 | 14000409 | DUBE III, JOSEPH A. | | |

| Count | Main_RustID | Contractor Name | Company Name 1 | Company Name 2 |
|---|---|---|---|---|
| 41 | 14000416 | DUPRE, LAURIEANN | | |
| 42 | 14000423 | SILVIA, MICHAEL A. | | |
| 43 | 14000430 | COOLEY, MICHAEL | | |
| 44 | 14000447 | LUONGO, PAUL J. | | |
| 45 | 14000454 | BARNUM, PETER T. | | |
| 46 | 14000461 | VECCHIO, RICHARD A. | | |
| 47 | 14000478 | BACANI, RICARDO L | | |
| 48 | 14000485 | GUILLET, ROLAND L. | | |
| 49 | 14000492 | DESORCY, RONALD ALBERT | | |
| 50 | 14000508 | WALSH, SHAWN PATRICK | | |
| 51 | 14000515 | SKILLIN, MARK CORSON | SKILLIN DELIVERY SERVICES INC. | |
| 52 | 14000522 | JOHNSON, WAYNE | | |
| 53 | 14000539 | SIMEONE, WENDI | WEGO INC. | |
| 54 | 14000546 | MILLER, HOWARD | | |
| 55 | 14000553 | PRESCOTT, KENNETH HAMILTON | | |
| 56 | 14000560 | SILVA, MIGUEL P | | |
| 57 | 14000577 | TIERNEY, RAY | | |
| 58 | 14000584 | COURY, WILLIAM | | |
| 59 | 14000591 | FIDALGO, JOHN A | JAF CORPORATION | |
| 60 | 14000607 | LAKE, JEFFREY D. | LAKE ENTERPRISES INC | LSS LOGISTICS INC |
| 61 | 14000614 | WOJTANOWSKI, JOSEPH A | | |
| 62 | 14000621 | PACHECO, JOSEPH | J. & E. PACKAGE SYSTEMS, INC | |
| 63 | 14000638 | TIERNEY, JOSEPH | | |
| 64 | 14000645 | VARGAS, JUAN BAUTISTA | | |
| 65 | 14000652 | REYNOLDS, KATHY A | | |
| 66 | 14000669 | JENKINS, KEVIN SEAN | | |
| 67 | 14000676 | ANTONELLI, LOUIS | | |
| 68 | 14000683 | CALADO, MANUEL E. | CALADO DELIVERY SERVICES LLC | CALADO DELIVERY SERVICES INC |
| 69 | 14000690 | PEROGINO, MARK | | |
| 70 | 14000706 | FOX, PETER | | |
| 71 | 14000713 | FONTAINE, RAYMOND E. | | |
| 72 | 14000720 | IRIZARRY, RICARDO | | |
| 73 | 14000737 | BARBOZA, WAYNE | SAMCORT INC. | |
| 74 | 14000744 | MOORE, ALEXANDER | | |
| 75 | 14000751 | ANDREOLI, ANTONIO | | |
| 76 | 14000768 | BUTLER, CHRISTOPHER | | |
| 77 | 14000775 | LOWERY, CLAUDE C. | | |
| 78 | 14000782 | CASTIGLIEGO, DAMON A. | | |
| 79 | 14000799 | GOLDERESE, DEBORAH J. | | |
| 80 | 14000805 | ESTRADA, ERIC | ESTRADA EXPRESS INC. | |

| Count | Main_RustID | Contractor Name | Company Name 1 | Company Name 2 |
|---|---|---|---|---|
| 81 | 14000812 | JOHNSON, GARY E. | | |
| 82 | 14000829 | SPRAGUE, GREGORY JON | | |
| 83 | 14000836 | HOTTENSTEIN JR., HAROLD T. | | |
| 84 | 14000843 | SANTOS, JOHN A | SANTOS DELIVERY SERVICE INC | |
| 85 | 14000850 | SMITH, JOHN L. | | |
| 86 | 14000867 | SOUZA, KEVIN JOSEPH | | |
| 87 | 14000874 | REBEIN, KEVIN | | |
| 88 | 14000881 | ASANTE, KWASI | | |
| 89 | 14000898 | ENES, LEONEL AMORIM | ENES COURIER SERVICE INC. | |
| 90 | 14000904 | DALRYMPLE, MARTIN | | |
| 91 | 14000911 | PHELAN, MATTHEW DAVID | | |
| 92 | 14000928 | OCONNELL, RAYMOND J. | | |
| 93 | 14000935 | MENARD, RAYMOND P. | | |
| 94 | 14000942 | GEMMA, RICHARD ANTHONY | GEM PACKAGE SYSTEMS LLC | |
| 95 | 14000959 | OLIVER JR., ROBERT A. | | |
| 96 | 14000966 | DEAN, RONALD L. | | |
| 97 | 14000973 | FARLAND, SAMMY J | | |
| 98 | 14000980 | ZONFRILLO, SAMUEL | | |
| 99 | 14000997 | HAMEL, STEVEN MICHAEL | | |
| 100 | 14001000 | SENUTA, STEVEN | | |
| 101 | 14001017 | RAFFERTY, THOMAS L. | | |
| 102 | 14001024 | BARBER, WAYNE G | WAYNE'S PLACE LLC | |
| 103 | 14001031 | MILLS JR., WAYNE F | | |
| 104 | 14001048 | GOULART, ANTONIO J. | A J GOULART INC. | A&S TRANSPORTATION INC |
| 105 | 14001055 | ST.GEORGE, EDWARD | | |
| 106 | 14001062 | MOURAO, JOHN B | J. MOURAO INC. | |
| 107 | 14001079 | CORTINHEIRO, STEVEN B. | AM CORTINHEIRO INC. | |
| 108 | 14001086 | DUPRE, LAURIEANN | | |
| 109 | 14001093 | SOUSA, MICHAEL D. | | |
| 110 | 14001109 | CORDEIRO, RICARDO J | RC TRUCKING INC. | |
| 111 | 14001116 | PACHECO, ALAN | | |
| 112 | 14001123 | QUINO SR., RAUL MILTON | | |
| 113 | 14001130 | CORDEIRO, EDWARD M | Z C TRUCKING INC | |
| 114 | 14001147 | SEQUEIRA, JEFFREY | | |
| 115 | 14001154 | SILVA, ANTHONY | | |
| 116 | 14001161 | CORREIA, WILLIAM | | |
| 117 | 14001178 | GUTHRIE, JOSHUA PAUL | JP GUTHRIE INC | |
| 118 | 14001185 | ALBERNAZ, RICHARD TEVES | | |
| 119 | 14001192 | CORDEIRO, RICARDO J | RC TRUCKING INC. | |
| 120 | 14001208 | MOSS, ERIC JAMES | MOUNT HOPE BAY TRUCKING INC | |

| Count | Main_RustID | Contractor Name | Company Name 1 | Company Name 2 |
|------:|-------------|-----------------|----------------|----------------|
| 121 | 14001215 | SAMB, ABABACAR | | |
| 122 | 14001222 | GUTHRIE, JOSHUA PAUL | JP GUTHRIE INC | |
| 123 | 14001239 | CHOUINARD, BRIAN PETER | | |
| 124 | 14001246 | CORAY, JOHN THOMAS | | |
| 125 | 14001253 | MICHAUD, KRISTINE MARIE | | |